UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____X

Jeffrey Daniels                    Civil Action
                                   No: 04-12030-RBC

   Plaintiff

VS.

National Railroad Passenger        OCTOBER 18, 2006
Corporation

   Defendant

_____X

## PLAINTIFF'S MOTION *IN LIMINE* TO LIMIT DR. PAPE'S TESTIMONY AND PRECLUDE NORTHWEST TOXICOLOGY DRUG TESTING REPORT AND SUPPORTING DOCUMENTS

In the event the Court does not preclude all evidence of the plaintiff's drug test results, the plaintiff moves, *in limine*, to preclude Dr. Pape from testifying about any opinions beyond those disclosed in his April 28, 2006 disclosure and to preclude Northwest Toxicology Drug Testing Report And Supporting Documents (76 pages).

It is undisputed that the plaintiff fell at work on July 19, 2002 at approximately 10:00 a.m. in the morning. *See* App. A, Amtrak Injury/Illness Report. The operator of the hi-rail truck spun the rear wheels and caused stones to kick up at the plaintiff. The plaintiff fell while stepping backwards to avoid the stones and struck his right shoulder on the steel rail of the track. The plaintiff's treating orthopedic doctor testified at his trial deposition that the plaintiff suffered tendonitis and impingement of his shoulder joint following the accident and needed to undergo surgery. There is no medical testimony

disputing his opinion. After receiving medical treatment at Milton Hospital, Amtrak ordered the defendant to undergo a drug test at the hospital. The drug test result was positive for cocaine metabolites. The plaintiff testified that he did not ingest any drugs within a 24 hour time period before the accident. When asked at his deposition about drug use during the 24-48 hour time period before the accident, the plaintiff asserted his Fifth Amendment right against self-incrimination.

**Dr. Pape's Disclosed Opinions**

The defendant disclosed Brian Pape, Phd., as an expert toxicologist on April 28, 2006. The only opinions of Dr. Pape that were disclosed by Amtrak were that (1) "The [drug test] results indicate the presence of cocaine and/or cocaine metabolite; and (2) Mr. Daniels positive urine drug test result is reliable evidence that he consumed cocaine." *See* App. B, Dr. Pape's Affidavit - Def.'s Expert Disclosure.

Dr. Pape's testimony, if permitted, must be strictly limited to the opinions set forth in his April 28, 2006 Rule 26(a)(2)(B) disclosure. On October 11, 2006 the defendant represented in the Parties' Joint Trial Memorandum that Dr. Pape would also testify about "the body's metabolism of cocaine, and the effects of cocaine." *See* Parties' Joint Trial Memorandum pp. 5-6. It is a fundamental principle that an expert cannot testify beyond his expressly disclosed opinions. *See* Fed. R. Civ. P. 26(a)(2)(B) (stating "[t]he report shall contain a <u>complete statement of all opinions</u> to be expressed and the basis and reasons therefore...")(emphasis added); *see also* Fed. R. Civ. P. 37(c)(1) (stating that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . information not so disclosed.").

2

Fed. R. Civ. P. 37(c)(1) requires absolute compliance with Rule 26(a), that is it "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Vance v. United States*, 1999 U.S. App. LEXIS 14943, 1999 WL 455435, at *3 (1999) (footnote omitted); *see also Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)(noting that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless"). "It is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction. *Wilson v. Bradlees of New England*, 250 F.3d 10, 21 (1st Cir. 2001).

Dr. Pape cannot be permitted to discuss "the body's metabolism of cocaine, and the effects of cocaine" because such testimony was not disclosed by the Court's expert disclosure deadline of April 2006 and the plaintiff relied on the April 2006 disclosure in deciding not to hire or consult his own expert. Additionally, testimony about "the body's metabolism of cocaine, and the effects of cocaine" cannot be permitted because the defendant has not disclosed any details about what Dr. Pape's opinions are with respect to metabolism and the effects of cocaine. The defendant is attempting to elicit more surprise expert testimony by failing to adequately describe what the doctor's new opinions are with respect to the newly disclosed topics of testimony.

For all these reasons, in the event the Court does not preclude Dr. Pape's opinion testimony identified in the April 28, 2006 disclosure on 402 and 403 grounds, the Court should preclude Dr. Pape from giving any opinions beyond (1) "The [drug test]

3

results indicate the presence of cocaine and/or cocaine metabolite; and (2) Mr. Daniels positive urine drug test result is reliable evidence that he consumed cocaine."

Accordingly, the plaintiff respectfully requests if the Court permits Amtrak to offer any evidence about the drug test results, that the Court strictly limit Dr. Pape's testimony to his two opinions set forth in the April 2006 expert disclosure.

**TOXICOLOGY REPORT AND SUPPORTING DOCUMENTS**

On October 11, the defendant first identified that it had "Northwest Toxicology Urinalysis and supporting documents."  That same day defense counsel sent 76 pages of previously un-produced documents regular mail to the plaintiff.  The first page of the 76 pages of documents is a cover letter from an Amtrak Human Resources Officer to defendant's counsel dated November 16, 2005 representing that the "original Litigation package relating to this lawsuit is enclosed."

The defendant should not be permitted to use any of these documents at trial because he failed to disclose them in a timely manner.  See Fed. R. Evid. 37(c)(1) Secondly, these documents should not be admitted as evidence because they are inadmissible hearsay and obviously prepared in anticipation of litigation.  See Fed. R. Evid. 802.  Thirdly, the 76 pages of newly produced documents should not be admitted into evidence because they are not relevant to proving whether or not the plaintiff was impaired at the time of the accident and they are unfairly prejudicial to the plaintiff.  See Fed. R. Evid. 402 and 403.

FOR THE PLAINTIFF,

BY *[signature]*
Scott E. Perry
George J. Cahill, Jr. (BBO #069480)
CAHILL, GOETSCH & MAURER, P.C.
43 Trumbull Street
New Haven, Connecticut  06511
(203) 777-1000


**CERTIFICATE OF SERVICE**

I hereby certify that on October _18_, 2006, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*[signature]*
Scott E. Perry

# *APPENDIX A*

# Amtrak AMTRAK INJURY/ILLNESS REPORT (Revised 10/94)

**(1)** DIVISION: A BT  **(1A)** RESCEN: 7064   DATE OF INCIDENT **(2)**: 07/19/02   **(3)** MULTIPLE INJURY INCIDENT? [Y/N]: N

**(4)** FRA CLASS OF INJURED PERSON [A,B,C,D,E,F]: ☐
WAS THIS A GRADE CROSSING ACCIDENT? ☐ YES ☒ NO
WAS THIS A RAIL EQUIPMENT INCIDENT [EQUIPMENT OR TRACK DAMAGE?] ☐ YES ☒ NO
**(4A)** PRELIMINARY REPORTABILITY ☐ YES ☐ NO   **(4B)** PRELIMINARY LOST TIME ☐ YES ☐ NO

## IDENTIFICATION OF INJURED PERSON

**(5)** Social Security Number: 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
**(6)** Name Last: Daniels   **(7)** First: Jeffery   MI:
Home Address: 181 Rockhill Road
City: Rupadam Milton   State: MA   Zip: 02186
Home Phone: 617-697-6778   Sex: M   Date of Birth: 2/24/59   Married/Single: M

## TIME AND LOCATION OF INCIDENT

**(8)** Time: 10:00 A
**(9)** Facility/Location/Place: River View Road
City: Bellingham   **(10)** State: MA   Nearest Station:
Milepost: 32.74   Track No.:   Train No.:   Car No.:   Lead Loco. No.:   Second Loco. No.:

Seat No./Room No.:   Passenger Origin:   Passenger Destination:
**(11)** Time Incident Reported to Supervisor: 10:20 A
**(12)** Date Incident Reported to Supervisor: 07/19/02

## DESCRIPTION OF INCIDENT

**(13)** Describe the activity that the injured/ill person was engaged in: Directing a Hi-rail Hi Rail truck to put on the track
**(14)** Describe how the injury/illness occurred: Truck pull forward & Rocks & Stone were flying up Employee moved out of way & Slipped
                Wet Grass & Wet Rail
**(15)** Name of the object or substance that directly caused the injury/illness:
**(16)** Describe the Injury/Illness: Right Shoulder & Right Hand

INCIDENT NO: Y Y M M D D DIV NO. SEQ. NO.

## IDENTIFICATION OF IMMEDIATE SUPERVISOR OR PERSON IN CHARGE

**(17)** Social Security Number: 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
**(18)** Name, Last: Mallon   **(19)** First: Patricia   M.I.: A
Title: Roadmaster   Work Phone ATS:   Bell: 617-222-5336
Supervisor's Signature: Patricia A. Mallon
**(20)** Time 260 completed: 12:00 P
**(21)** Date: 07/19/02

Was The Person Provided First Aid/Treatment? ☐ Yes ☐ No
Name of Person Accompanying Injured Person to Medical Facility: Patricia Mallon

## INJURED EMPLOYEE INFORMATION

**(22)** Occupation: Mechanic   **(23)** Dept.: B+B   **(23A)** Tour of Duty: 7:00A - 3:30P   **(23B)** Crew Base: 7064   Func.: 1281   Work Order No.:
Gang No.: 4992   Extra Board [Y/N]: N   **(24)** Hours into Shift: 3   Day of Week: FR (MO,TU,WE,TH,FR,SA,SU)   Rest Days of Week: Sa, Su
Hire Date: 9/15/97   Rule Violation Number:

NRPC 260 (10/94)

# AMTRAK INJURY/ILLNESS REPORT
## PERSONAL STATEMENT
(To be completed and signed by the injured person)

| Last Name | First Name | M.I. | Soc.Sec.No. |
|---|---|---|---|
| Daniels | Jeffery | A | 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 |

| Date of Accident | Place of Accident |
|---|---|
| 7/19/02 | Bellingham MA |

Amtrak may need to contact you within the next 72 hours. Please provide a telephone number(s) where you can be reached.

Describe Fully How Accident Occurred: Was lineing up the High Rail Truck #142 to put on Rails Driver was Pulling forward and the Tires started spinning and kick up stone & Debrie I stepped back to get out of the way and slipped on tie and slammed against the Rail

Describe Cause Of The Accident: Lost footing on wet Tie and landed Right shoulder & Hand against the Rail

Describe Injury/Illness: Pain in Swelling in Right Hand and Shoulder.

Were you provided first aid at the place of this accident?  ☐ Yes  ☒ No
Were you taken to a medical facility for treatment?  ☒ Yes  ☐ No
If yes, what was the name of the facility that you were taken to for treatment.
Milton Hospital

Describe the treatment provided:

Witnesses: (please print clearly)

| Name | Department | Phone | Address |
|---|---|---|---|

Signature of Injured Person: Jeffrey Daniels
Date: 7/19/02

NRPC 260 (10/94)

# *APPENDIX B*

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Civil Action No.: 04-12030MLW

---

**Jeffrey Daniels, Plaintiff**     )
                                   )
                                   )
**v.**                             )
                                   )
**National Railroad Passenger Corporation, Defendant**     )

---

AFFIDAVIT

BRIAN E. PAPE, Ph.D., BCFE, BCFM

1.  My name is Brian E. Pape. My scientific expertise is concentrated in the fields of toxicology and related sciences. A summary of my education-training-experience is attached as an Exhibit.

    I have considerable experience and expertise regarding the conduct-reliability-and-interpretation of urine drug test results; and I have been qualified to offer related expert testimony in State Superior Courts and Federal Courts.

2. I have reviewed case materials relating to Mr. Jeffrey Daniels and this matter:

> Milton Hospital Emergency Room Record
>
> Milton Hospital Work-related Triage
>
> Alcohol Testing Form (Non-DOT)
>
> AMTRAK Chain-of-Custody relating to urine drug testing
>
> Deposition testimony of Mr. Daniels
>
> Results of a post-accident urine drug test done on a specimen collected from Mr. Jeffrey Daniels on 07/19/2002 and reported by EHP Employee Health Programs Medical Review Officer as Drug Test Results.

The EHP drug test report indicated a "positive" result for cocaine in Mr. Daniels post-accident urine specimen collected on 07/19/2002.

3. I am familiar with the standard operating procedures (SOPs) and urine drug screen testing on Mr. Daniels' urine.

> The SOPs-test methodology-and-quality assurance associated with this type of urine drug testing are generally accepted. The results indicate the presence of cocaine and/or cocaine metabolite.

4. Mr. Daniels' positive urine drug test result is reliable evidence that he consumed cocaine.

2

My opinions are based on my review of case-specific evidence, my education-training-experience, generally accepted medical and scientific principles and studies, and a reasonable degree of scientific certainty.

Signed under the pains and penalties of perjury.

*Brian E. Pape*

---

**Brian E. Pape, Ph.D., BCFE, BCFM**
Electronically signed and witnessed by Dr. Pape on 04/28/2006

3

# BRIAN E. PAPE, Ph.D., BCFE, BCFM

*- Specializing in Toxicology -*

B.A.  Washington University, 1966
M.S.  Michigan State University, 1969
Ph.D. Michigan State University, 1974

| | |
|---|---|
| 1986-Present: | Pape & Associates, Inc. (*Specializing in Toxicology*) Board-certifications: Forensic Examiner, Forensic Medicine |
| 1986-1997: | Assoc. Prof., University of Massachusetts Medical School (*Clin. Appt.*) |
| 1983-1986: | Senior Assoc. Consultant, Mayo Clinic (Rochester, MN); and, Director of Toxicology, New England Toxicology Services |
| 1973-1982: | Faculty, Department of Pathology, U of MO School of Medicine; Assoc. Prof. of Pathology and Director of Toxicology (*Full-tenure awarded*) |
| 1966-1972: | Graduate Research Assistant, Pesticide Research Center, MSU, Pesticide Chemistry (M.S. and Ph.D. research) and Toxicology |

Dr. Brian Pape is a consultant with Pape & Associates, specializing in toxicology and related sciences. From 1986 to 1997, he held a faculty appointment as Associate Professor of Pathology, University of Massachusetts School of Medicine.

From 1982 to 1985, he was Senior Associate Consultant for Mayo Clinic (Rochester, MN), and Director of Toxicology at New England Toxicology Services (Woburn, MA).

From 1973 to 1982, Dr. Pape was Director of Toxicology and Associate Professor in the Department of Pathology at the University of Missouri School of Medicine (Columbia, MO), where he was a member of the Emergency Room Committee, Environmental Trace Substances Research Center Advisory Committee, Committee on Pathogens-Toxins-and-Carcinogens, and Missouri Association of Crime Laboratory Directors' Technical Advisory Committee.

Dr. Pape has published more than 50 research papers, abstracts, and professional articles relating to alcohol and drugs, pesticides and toxic chemicals, analytical chemistry, forensic science, and general toxicology. He currently writes technical updates for the *Toxicology Reporter*.

He has served as a technical and expert consultant to business, labor, and governmental agencies. He has been qualified as an expert in toxicology and related sciences in District, Superior, and Federal Courts.

His expertise has been recognized by American Men and Women of Science, Who's Who in Technology Today, Who's Who in Medicine/Healthcare, and the scientific honorary Sigma Xi; and, he is a member of numerous scientific organizations.

Dr. Pape has been board-certified by the American College of Forensic Examiners (BCFE) and the American Board of Forensic Medicine (BCFM).