## Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Volume I
Pages 1-94
Exhibits: None

* * * * * * * * * * * * * * * * * * *

JEFFREY DANIELS,

    Plaintiff

vs.    CIVIL ACTION
    NO. 04-12030MLW

NATIONAL RAILROAD PASSENGER
CORPORATION,

    Defendant

* * * * * * * * * * * * * * * * * * *

DEPOSITION OF JEFFREY A. DANIELS, taken on behalf of the Defendant, pursuant to the Federal Rules of Civil Procedure before Christina M. Bromley, Certified Shorthand Reporter, Registered Professional Reporter, a Notary Public within and for the Commonwealth of Massachusetts at Morrison Mahoney, 250 Summer Street, Boston, Massachusetts 02210, commencing at 1:10 PM on Tuesday, August 30th, 2005.

ELLEN M. FRITCH & ASSOCIATES
373 SILVER STREET
SOUTH BOSTON, MASSACHUSETTS 02127
617-269-5448

## Page 2

APPEARANCES:

MORRISON MAHONEY
[BY:  W. JOSEPH FLANAGAN, ESQ.]
    250 Summer Street
    Boston, Massachusetts 02210
    For the Defendant

CAHILL, GOETSCH & MAURER
[BY:  SCOTT E. PERRY, ESQ.]
    43 Trumbull Street
    New Haven, Connecticut 06510
    For the Plaintiff

## Page 3

I N D E X

| Deposition of: | Direct | Cross | Redirect |
|---|---|---|---|
| JEFFREY A. DANIELS | | | |
| (by Mr. Flanagan) | 5 | | 89 |
| (by Mr. Perry) | | 85 | |

## Page 4

PROCEEDINGS

(Whereupon the witness's identity was verified via his driver's license.)

MR. FLANAGAN: Do you want to go with the usual stipulations?

MR. PERRY: You don't have a problem just saying it by the Federal Rules of Civil Procedure, is that okay with you? Because generally I found they're relatively similar in many ways. I don't know exactly what your usual stips are.

MR. FLANAGAN: I'll recite them if you'd like I mean.

MR. PERRY: Sure.

MR. FLANAGAN: Or you could just waive all stipulations and just go without any stipulations.

MR. PERRY: But the stipulation that's pursuant to the Federal Rules of Civil Procedure.

MR. FLANAGAN: Yes.

MR. PERRY: Is that fine with you?

MR. FLANAGAN: You don't want to reserve objections?

MR. PERRY: Well, Federal Rules do allow you to do that.

MR. FLANAGAN: You have to stipulate to it.



**25**

1  Q. Any other injuries arising out of any accidents
2  in your lifetime?
3  A. No, sir.
4  Q. How about Worker's Compensation claims, have you
5  had any claim against your employer for being hurt other
6  than the July 19th of 2002 accident?
7       MR. PERRY: Objection to form. You can answer.
8  A. I made a mistake. There was another accident
9  that I had.
10  Q. Okay, why don't you tell me about it.
11  A. I'm not exactly sure what year, but I had a head
12  injury on the MBTA, when I was working for the MBTA.
13  Q. When did you work for the MBTA?
14  A. From '84 to '89 I believe.
15  Q. What was your job?
16  A. A guard, opening and closing doors on the train.
17  Q. What train?
18  A. The orange line train, that's the line I worked
19  for.
20  Q. So your job was to be inside the train, and you
21  would open the doors?
22  A. Yeah, in the cab. You want me to go into it and
23  explain?
24  Q. Yes, sure.

**26**

1  A. They have a cab where you – where the guard
2  sits. And the motor man sits in the front. I sit in
3  the middle between the trains. And when we pull in the
4  station, I open the doors and let the passengers on.
5  And I shut the doors when we move to proceed to the next
6  station.
7  Q. Okay. And what happened to you, how did you get
8  hurt?
9  A. There was a broken visor, sun visor, in my cab.
10  And as the train pulled into the last station and I was
11  getting ready to stand up to open the doors, he slammed
12  on the brakes and my head went into the corner of the
13  visor.
14  Q. And what happened?
15  A. It put a hole in my head, and I passed out. Next
16  thing I know, I was in the hospital.
17  Q. So it cut your head open?
18  A. Yes.
19  Q. All right. What type of injury did you have
20  besides the cut?
21  A. That's it.
22  Q. Concussion or anything?
23  A. I – I – I do not know exactly, sir.
24  Q. So you had some sort of Worker's Compensation

**27**

1  claim against the T?
2  A. Yes, sir.
3  Q. And that was settled and you went back to work
4  eventually?
5  A. Went back to work, yes, sir.
6  Q. Any long-term problems arising out of that
7  accident and injury?
8  A. No, sir.
9  Q. Other than the MBTA – When was that, '89 or so?
10  A. Yes, sir.
11  Q. Other than that accident in 1989 when you worked
12  for the T, have you ever had any other Worker's
13  Compensation claims?
14  A. No, sir.
15  Q. Or injuries incurred while working?
16  A. No, sir.
17  Q. Now, turning your attention to the date of the
18  accident, did you consume any alcohol that day?
19  A. No, sir.
20  Q. Did you smoke any marijuana that day?
21  A. No, sir.
22  Q. Do you know what an amphetamine is?
23  A. Yes, sir.
24  Q. Speed or something like that. Did you consume

**28**

1  any amphetamines?
2  A. No, sir.
3  Q. Did you ingest any cocaine?
4  A. No, sir.
5  Q. Did you ingest any drugs whatsoever on the day of
6  the accident?
7  A. No, sir.
8  Q. How about the day before the accident, did you
9  consume any alcohol?
10  A. No, sir.
11  Q. Smoke any marijuana?
12  A. No, sir.
13  Q. Did you take any cocaine?
14  A. No, sir.
15  Q. Or speed or amphetamines?
16  A. No, sir.
17  Q. Or tranquilizers?
18  A. No, sir.
19  Q. How about two days before the accident, did you
20  consume any alcohol?
21  A. I plead the Fifth on that.
22  Q. You take the Fifth Amendment, your right against
23  self-incrimination, to the question of whether or not
24  you consumed alcohol two days before the accident?

**29**

1  A. Yes, sir.
2  Q. All right. How about did you smoke any marijuana
3  two days before the accident?
4  A. No, sir. I plead the Fifth.
5  Q. Wait a minute. You can plead the Fifth, sir, but
6  I just want to make sure I'm getting the correct
7  answers.
8       MR. PERRY: If you're going to plead the Fifth,
9  plead the Fifth. You don't answer the question when you
10 plead the Fifth.
11 Q. All right, let me just reask that again just so
12 we're clear, all right. Two days before the accident,
13 sir, so, in other words, the accident occurred July
14 19th, 2002, right?
15 A. Yes, sir.
16 Q. And I asked you if you consumed any alcohol or
17 any drugs of any kind on that day, and you said no,
18 correct?
19 A. No.
20 Q. That's correct?
21 A. Correct.
22 Q. And on the day before the accident I asked you
23 the same thing about alcohol and any drugs of any kind,
24 and you said no, correct?

**30**

1  A. Correct.
2  Q. All right, now we're talking about two days
3  before the accident, so that would be July 17th, 2002.
4  A. And I pleaded the Fifth.
5  Q. All right, to the question of whether or not you
6  had any alcohol you pleaded the Fifth?
7  A. I take the Fifth.
8  Q. Okay. And what about did you consume any
9  marijuana?
10 A. I pleaded the Fifth.
11 Q. All right, and amphetamines?
12 A. I plead the Fifth.
13 Q. How about cocaine?
14 A. Plead the Fifth.
15 Q. And did you take any tranquilizer of any kind two
16 days before the accident?
17 A. I plead the Fifth.
18 Q. Okay, how about three days before the accident,
19 do you remember taking any alcohol at all or drinking
20 any alcohol?
21 A. Plead the Fifth.
22 Q. And what about any other type of medication,
23 drugs of any kind?
24 A. Plead the Fifth.

**31**

1  Q. Did you drink any alcohol –
2       MR. FLANAGAN: Strike that.
3  Q. Do you remember what day of the week the accident
4  happened on?
5  A. Friday I believe it was.
6  Q. All right. So two days and three days before the
7  accident, those were workdays for you?
8  A. Yes.
9  Q. So did you consume any alcohol during the course
10 of your workday two days before the accident?
11      MR. PERRY: I'd like to just consult to see
12 whether he has an issue in answering that question.
13      MR. FLANAGAN: Yes, go ahead.
14      (Out-of-room consultation.)
15      MR. PERRY: Could you just please read back the
16 last question.
17      (The requested portion of the record was read
18       back by the Reporter.)
19      MR. PERRY: Did you hear the question?
20      THE WITNESS: Yeah.
21      MR. PERRY: During the course of the workday,
22 that was the question.
23      THE WITNESS: I heard the question.
24      MR. PERRY: Okay.

**32**

1  A. No.
2  Q. Did you consume any alcohol the day before the
3  accident during the workday?
4  A. No.
5  Q. Did you consume any drugs of any kind two days
6  before the accident during the workday?
7       MR. PERRY: Any kind of illegal drugs you're
8  asking about, legal or illegal?
9       MR. FLANAGAN: Well, first just drugs. And then
10 if I get a yes out of that, I'll go to the next one –
11 A. No.
12      MR. PERRY: Wait a minute, wait a minute.
13      MR. FLANAGAN: – and I'll clarify it.
14      MR. PERRY: Can you read back the question,
15 please.
16      (The requested portion of the record was read
17       back by the Reporter.)
18      MR. PERRY: And you're asking about illegal or
19 legal drugs, correct?
20      MR. FLANAGAN: Right.
21 A. No.
22 Q. During the week before the accident, sir, did you
23 consume any drugs of any kind during the workday?
24      MR. PERRY: Just you're asking whether – You're

### 33

1  asking him from any point, just so I'm clear, from a
2  week before the accident up until the accident?
3       MR. FLANAGAN: Right.
4       MR. PERRY: Okay, so he's asking beyond the 24
5  hours before the accident.
6  A.  I take the Fifth.
7       MR. PERRY: Could I just ask — Let me clarify
8  one thing. When you're asking about during the workday,
9  are you asking him about work hours while he's on work
10 time?
11      MR. FLANAGAN: Right.
12      MR. PERRY: Or during the day that includes work
13 but beyond the work hours?
14      MR. FLANAGAN: No, during the work hours.
15      MR. PERRY: Okay, let me just — can I just
16 consult to see if there's an issue?
17      MR. FLANAGAN: Let me just ask the question
18 again. I think he's answered the question, but I will
19 ask him one more time just to clarify.
20 Q.  During the week before the accident, sir, did you
21 consume any drugs during work hours?
22 A.  No.
23 Q.  Or how about before work?
24      MR. PERRY: Hold on. The question, just so I'm

### 34

1  clear, you're asking him whether within the whole week
2  before the accident he consumed any type of drugs,
3  illegal or legal, before any time he reported to work,
4  is that the question?
5       MR. FLANAGAN: Right.
6       MR. PERRY: I'm going to consult just to make
7  sure he understands his rights with respect to this
8  question, sir.
9       MR. FLANAGAN: Well, I mean I don't know if I
10 really — I think he should answer the question to be
11 honest with you. I don't think he should be coached.
12      MR. PERRY: Well, he's not being coached. He
13 needs to know his rights.
14      MR. FLANAGAN: He knows his rights. Obviously he
15 knows them better than most people do. He took the
16 Fifth the first time I asked him. I am not assenting to
17 you leaving the room.
18      MR. PERRY: Okay, that's fine, I'm going to
19 consult to make sure he understands his rights.
20      (Out-of-room consultation.)
21      MR. PERRY: Do you want to read that last
22 question back.
23      (The requested portion of the record was read
         back by the Reporter.)
24

### 35

1       MR. PERRY: Could you read the question before
2  that, please.
3       (The requested portion of the record was read
         back by the Reporter.)
4
5  A.  I take the Fifth.
6  Q.  All right, on the, let's see, two days before the
7  accident, sir, did you consume any drugs before work?
8  A.  I take the Fifth.
9  Q.  Three days before the accident, sir, did you take
10 any drugs before work?
11 A.  I take the Fifth.
12 Q.  And four days before the accident, sir, did you
13 take any drugs before work?
14 A.  I take the Fifth.
15 Q.  On the day of the accident, sir, did you take any
16 drugs before work?
17 A.  No.
18 Q.  The week before, sir, the week ending July 12th,
19 did you take any drugs before work during that week?
20 A.  I take the Fifth.
21 Q.  And how about the week before that?
22 A.  I take the Fifth.
23 Q.  And the week before that?
24 A.  I take the Fifth.

### 36

1  Q.  Now, these drugs, sir — Let me ask you this.
2  Before work hours on the week of the accident did you
3  take any prescription medication, any over-the-counter
4  medication?
5       MR. PERRY: I'm sorry, could you — I didn't hear
6  that question.
7  Q.  During the week before the accident, sir, before
8  work hours did you take any prescription medication or
9  other kind of drugs for any health benefit?
10 A.  I don't remember.
11 Q.  All right. During say a month before the
12 accident do you recall being on any medication
13 prescribed by a physician, during the month before the
14 accident?
15 A.  I don't remember.
16 Q.  During the second, third and fourth days before
17 the accident, sir, did you consume any cocaine before
18 work hours?
19      MR. PERRY: You're talking this —
20      MR. FLANAGAN: The week of the accident.
21      MR. PERRY: But you're not talking the first 24
22 hours, you're talking about beyond the 24 hours?
23      MR. FLANAGAN: Yes.
24 A.  I take the Fifth, sir.